FRATERNAL AID UNION *v.* HIGH.

Opinion delivered February 25, 1918.

1. APPEAL AND ERROR—UNDISPUTED TESTIMONY.—On appeal this court does not pass upon questions of mere probability, and the verdict of a jury is conclusive upon disputed questions of fact where any real dispute or controversy exists; it is only when all reasonable minds must reach the same conclusion that this court will say that the testimony is so undisputed that no question of fact is presented for the jury's decision.

2. LIFE INSURANCE—HEALTH OF INSURED—FINDING OF JURY.—In an action on a policy of life insurance, the finding of the jury that the insured had not misrepresented his physical condition in his application for insurance, *held* not contrary to the evidence introduced.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*Hill, Fitzhugh & Brizzolara,* for appellant.

*J. A. Gallaher,* for appellee.

SMITH, J. This is an action instituted by Emma High to recover as beneficiary on a fraternal benefit policy held by her husband, L. M. High, in the Fraternal Aid Union. The sole questions presented are the breach of certain warranties made by High to procure the insur-

ance, and it is earnestly insisted that High was afflicted with syphilis at the time of his application, and that he falsely represented that he had not consulted with any physician within five years, whereas, in truth and in fact he had, within that time and shortly before the issuance of the policy, taken treatment for that disease. It is also insisted, as ground for the reversal of the judgment, that High had falsely warranted that no change of climate or location had been sought or advised for the benefit of his health, when, in fact, he had gone to Hot Springs at the direction of his physician for treatment for syphilis.

The policy was issued on November 1, 1916, and High died on December 2, 1916, after having paid only one assessment. It is said that, if syphilis contributed to his death, he must have been afflicted with it at the time of the issuance of the policy, and physicians testify that this must have been true as a scientific fact, and the truth of that statement is not challenged.

A Doctor Hampson testified that he was a specialist in genito-urinary diseases, and had treated High for a period of a month or two for syphilis, and that in April, 1916, he had sent him to Hot Springs for further treatment for that disease, and he also testified that High had, himself, told him that he had been afflicted with syphilis for six or eight years. A Doctor Morrisey testified that the immediate cause of High's death was a form of meningitis, which was brought on by a tumor of the brain which was produced by syphilis. That there was an enlargement of the glands, which was an evidence of syphilis, and that he examined High for symptoms of other diseases which could have produced his condition and found no indication of any other disease.

(1) It is argued that under this testimony the question of the breach of warranty should not have been submitted to the jury, as no other reasonable conclusion could be drawn from the testimony. It is well understood, however, that we do not pass upon questions of mere probability, and that the verdict of the jury is conclusive upon disputed questions of fact where any real dispute or con-

troversy exists, and that it is only when all reasonable minds must reach the same conclusion that we will say the testimony is so undisputed that no question of fact is presented for the jury's decision.   Was the testimony in this case so far undisputed as that a jury, having an intelligent comprehension of the testimony in the case, must necessarily, as reasonable men, have reached the conclusion that High had made false statements in regard to his condition to induce the issuance of the policy sued on? If so, a verdict should have been directed in favor of the insurance company.   Otherwise, the cause was properly submitted to the jury.

(2)   There was introduced in evidence the affidavit of Doctor Hampson, made as attending physician in connection with the proof of death of High for the collection of a policy which High held in the Brotherhood of American Yeomen.   In this affidavit Hampson was required to fill in certain blanks in his own writing, and he there made the following answers:   "Q.   For what ailments did you treat or advise deceased prior to his last illness?   A. Malaria.   Q.   Give date and duration and result of each. A.   1915—good."   He also answered that the immediate cause of death was meningitis and that the first symptoms of that disease appeared on November 29, 1916, three days before High's death.   Mrs. High, the wife of the insured, testified that her husband did go to Hot Springs, but that he went there on his vacation and to accompany her and her mother, who went there to take the baths for rheumatism.   She testified that she and her husband after their marriage lived together for the eight years immediately preceding his death; that his general health was excellent; that Doctor Hampson had treated her husband only two or three times, and that he had been treated by a physician only five or six times during their married life, and that he was not in bad health.   A Doctor Jefery testified for the insurance company, and identified High's application as containing answers given by High in regard to his health.   Accompanying this application was his confidential report, in which he stated that High ap-

peared to be a first-class risk for insurance. Doctor Morrisey stated that all he knew about the case personally was the existence of the enlarged glands which he found after High's death. But a Doctor Eberle, who testified for the plaintiff in rebuttal, stated that these enlarged glands would not necessarily indicate syphilis, and that only an autopsy would have certainly revealed whether High had that disease or not. No autopsy was held. Doctor Eberle also testified that the blood test and the clinical test were the ordinary tests for syphilis, and no witness testified that he had performed either of these tests. This physician also testified that, if one had syphilis in a stage so far advanced as to develop into meningitis, his general health would be seriously impaired and his condition would be apparent to any ordinary physician for some time before his death from that disease, and that it would be apparent to the examining physician at least a month before the applicant's death that the applicant's general health was bad and that he was not a first-class risk for insurance. A Doctor Johnson, who was the examining physician for the insurance company, admitted that such might be the case. Doctor Hampson testified that he told officers of the Brotherhood of American Yeomen that High had meningitis, which was caused by a syphilitic tumor.

Under this evidence, we are of the opinion that the jury did not act arbitrarily or capriciously in returning a verdict against the insurance company. The testimony gives support to the finding which the jury must have made that Doctors Hampson and Morrisey were mistaken; that doctors could be mistaken about the existence of this disease in the absence of the use of the standard tests for its detection.

The cause was submitted to the jury under proper instructions, and the judgment is affirmed.