CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
v. DANIEL.

Opinion delivered June 15, 1925.

1. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—In an action by a ripsawyer for injuries caused by the negligence of a helper, where there was evidence that the plaintff did not know of the helper's negligence in time to avoid injury, the question whether plaintiff assumed the risk of the helper's negligence was for the jury.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—Where a verdict is challenged on appeal, the only inquiry is whether there is any substantial evidence to sustain it, and the evidence must be given its strongest probative force in favor of the verdict.

3  TRIAL—DUTY TO DECLARE LAW.—Where the testimony is undisputed, and all reasonable minds must draw the same conclusion of fact from it, it is the duty of the court to declare, as

matter of law, the only conclusion or finding of fact to be reached from consideration thereof.

4. MASTER AND SERVANT—ASSUMED RISKS.—Though an experienced ripsaw operator assumed the ordinary risks incident to the work, including the manner in which his helper did his work, he had a right to assume that the helper would perform his duty until something occurred to advise him to the contrary, and where, up to the time of the accident, nothing occurred in the helper's conduct to advise him that the helper was not discharging his duty properly, negligence of such helper was not a risk which he assumed.

5. MASTER AND SERVANT—ASSUMED RISK.—The doctrine of assumed risk is predicated upon the knowledge of the employee of the risks to be encountered and his consent to be subjected thereto.

6. MASTER AND SERVANT—ASSUMED RISK.—Although the Employers' Liability Act (Acts 1913 p. 734) does not deprive the employer of the defense of assumed risk, when the injury is the result of negligent acts of a fellow servant of which the injured employee had knowledge, neither does the injured employee assume the risk of injury from the negligence of a fellow servant of which he had no knowledge or appreciation.

Appeal from Prairie Circuit Court, Southern District; *George W. Clark*, Judge; affirmed.

*Thos. S. Buzbee, Geo. B. Pugh* and *H. T. Harrison*, for appellant.

*Taylor Roberts* and *Tom W. Campbell*, for appellee.

WOOD, J. This is an action by the appellee against the appellants for a personal injury. The appellee alleged in substance that he was in the employ of the appellant company in its mill department as a rip sawyer, and that, while engaged in the discharge of his duties, a board which he was attempting to rip was thrown against the appellee inflicting serious injuries upon him; that Raymond Kimbrel was appellee's helper and also in the employ of the appellant company; that Kimbrel's duty was to stand at the end of the table at the back of the rip saw and to hold down the board firmly so as to keep it from bucking up or kicking back, and to help pull said board along the table against the saw as appellee held it against the guide, thereby helping to rip same; that, while appellee was pushing the board in ques-

tion against the saw to rip same, Kimbrel negligently failed to properly hold the board down upon the table, and thereby allowed the same to buck up and get back upon the saw so that the teeth of the saw caught upon the surface of the board and the board was thrown back with terrific force against the appellee.

The appellants denied all the material allegations of the complaint as to negligence and set up the affirmative defenses of contributory negligence and assumed risk on the part of the appellee. The facts are substantially as follows:

On the 12th of July, 1923, appellee was working for the appellant company in its shops at Biddle as a rip-sawyer. The rip saw is a circular saw and revolved in a slot through the center of the top of the table. The table was four feet wide and six and a half feet long. The appellee's duties required him to stand at the end of the table in front of the saw and press the boards he was ripping against the saw, while it was revolving rapidly, in order to rip the boards. It was his duty to rip the boards as they were brought to him by another one of the company's employees. At the time the appellee was injured he was ripping door stocks $38\frac{1}{2}$ inches long, 7/8 of an inch thick, and 12 inches wide. The boards were to be ripped down to $7\frac{1}{2}$ inches. There were four of these boards, and appellee was injured as he was ripping the fourth board. The saw was operated on a mandrel in the center of the table with a frame device for feeding above the saw. The feeder was sitting on an iron frame above the table and in front of the saw. It had three or four little sprockets or teeth wheels to push the plank through and on to the back of the saw. Some 26 or 28 inches from this feeder was a steel roll five inches in diameter and 12 or 14 inches long at the back of the saw, the purpose of which was to hold down the back end of the board as it passed through the saw. The board did not come under this roll until it had gone through the saw and was eight or ten inches beyond the back end of the

saw. The saw could be operated without using the automatic feeder. Appellee was not using the automatic feeder at the time he was injured for the reason that he could not get good results by using it. Appellee's foreman had told him that the automatic feeder would not carry the board through straight, and that he should not use the feeder because it was junking too much stuff. By not using the feeder, and with the helper on the other side to hold the board down and pull it through while appellee was holding it against the guide, the boards could be ripped accurately.

Kimbrel, the appellee's helper, could hold the boards down with his hands or with pull-off-sticks which were from 3½ to 6 feet long. They were about two inches wide and one inch thick with an inch shoulder projecting at right angles from the edge at one end. They were designed so that the helper could hold down the board by placing his strength on it and at the same time assist in ripping the board by pulling the same against the saw. There were three or four of these pull-off sticks lying on the helper's end of the table at the time the appellee was injured. It was not appellee's duty to use the pull-off sticks, and he could not do so from his end of the table. The pull-off stick used by the helper at the time of the injury was 5½ or 6 feet long. The helper had plenty of room. If he did his duty he could hold down the board with the pull-off stick by putting his strength on it. It was not necessary for the helper to take hold of the board either with his hands or the pull-off stick until the saw had ripped into the board more than half the width of the saw. At the time appellee was injured he was ripping what was called "a bull pine board" made of knotty pine, and it was a sap board and a little damp. At the time appellee was injured the board was about through the saw when it was kicked back. It pushed close up against the saw and began to buck, went to pinching, bucked up and over. It got on top of the saw and shot back. It was not possible for

appellee at his end of the board to hold the same down and keep it from bucking up for the reason that the back end of the saw comes up and the front end goes down and whenever a board rides up on the saw it rides up on the back end—the end next to the helper. The negro helper did not hold his hands on the board. He never touched it. There were 7½ inches between the saw and the guide. It was 2½ feet, not over 2¾ feet, from the back of the saw to the end of the table where the helper was standing. He had 7½ inches on the other side of the saw where he could easily put his hands on the board without coming in contact with the saw. He could have done better by putting his hand on each side of the saw. He would have had to reach over to have done so, or he could have used the pull-off stick. He did not do it. Appellee didn't know whether the helper attempted to hold down the board or not, but it was his duty to have done so. Appellee was not looking at him at the time. It was his duty to have watched every board as appellee pushed it against the saw and to take care of his end of the board. It was not appellee's duty to watch the helper. Appellee was depending on his helper to take care of his own end—to watch the board and take care of it as he had always done. Appellee assumed that his helper was doing his duty, but when appellee saw the board buck up and that the helper was not holding it down, he hollered to him to get the board and hold it down. The board bucked up on top of the saw and was thrown back with terrific force against the appellee striking him in the groin, knocking him down and breaking his hip. The appellee had worked at a rip saw for years and was an experienced operator. A model was before the trial court and was also used before this court in the oral argument, explaining the machine and the method of operation at the time appellee was injured.

The appellant prayed the court to instruct the jury to return a verdict in its favor, which prayer the court

refused and the appellant duly excepted. The jury returned a verdict in favor of the appellee in the sum of $2,500. The court rendered judgment in accordance with the verdict, from which is this appeal.

The only contention of learned counsel for appellant in brief and oral argument is that, under the undisputed facts of this record, the appellant was entitled to an instructed verdict on the ground that the appellee had assumed risk of the injury which he received. But we are convinced that the trial court ruled correctly in refusing to instruct the jury as a matter of law that the appellee had assumed the risk. It was an issue for the jury under the evidence to determine whether or not the appellee assumed the risk. In reaching this conclusion, we observe the well-settled rules, often announced, that, when a cause reaches this court and the verdict is challenged, the only inquiry is whether there is any substantial evidence to sustain it, and the evidence must be given its strongest probative force in favor of the verdict; and that where the testimony is undisputed and all reasonable minds must draw the same conclusion of fact from it, then it is the duty of the court to declare as a matter of law the only conclusion or finding of fact to be reached from a consideration of the testimony. *Fowler* v. *Hammett,* 162 Ark. 307-317.

In sending to the jury the issue of assumption of risk the trial court instructed that "the servant assumes all the ordinary and usual risks and hazards that are incident to the service in which he is engaged; but he does not assume the risk of any injury, danger or peril that arises from, or is caused by, the negligence of a fellow-servant, unless he knows, or by the exercise of ordinary care could have known, of such negligence and appreciates the danger thereof in time to avoid the injury." Counsel for appellant concede the correctness of the law as thus announced, but insist that as applied to the facts of this record appellant was entitled to an instructed verdict. It occurs to us that reasonable

minds might have concluded from the testimony of the appellee that he did not know of the negligence of his helper in failing to hold down the board in time to have avoided the injury caused by such negligence. While the appellee does testify that he saw that his helper was not holding the board down and told him to get hold of it and hold it down, yet the appellee was asked the following question: "Did you know it at the very occurrence of the accident," and answered "No, sir; I was interested in looking at the board; I was not looking at my helper." The appellee testified that it was not his duty to watch the helper; that it was his duty to watch his own business. To rip the board accurately and get the same out exactly according to specifications given it was necessary for him to give attention to his end of the board and hold the same against the guide, and it was likewise necessary that the helper give attention to his end of the board by holding same down either with the pull sticks or by pressing down upon it and pulling it through with his hands. This was the helper's duty, and up to the time of the accident he had performed it, and there was nothing to cause the appellee to apprehend that the helper would not still do so until the board began to buck, and then it was too late for the appellee to avoid the injury.

At least, we believe the testimony would fully justify reasonable minds in coming to such conclusion. The appellee was an experienced rip-sawyer and unquestionably assumed all the ordinary risks incident to his work, including the manner in which he observed that the work was being done by his helper. *Graham* v. *Thrall*, 95 Ark. 560. But the appellee had a right to assume that the helper would perform his duty until something occurred to advise him to the contrary, and up to the time of the accident nothing had occurred in the conduct of the appellee's helper to indicate that he was not discharging, and would not discharge, the duty incumbent upon him to hold down his end of the board.

On the contrary, the undisputed testimony shows that the helper had been faithfully performing his duty with reference to the several boards that had been previously ripped that day. So it cannot be said that the negligence of appellee's helper and fellow-servant was an obvious risk of which the appellee, in the exercise of ordinary care in the performance of his own duties, was bound to observe.

In *St. Louis, etc. Ry. Co.* v. *Martin,* 165 Ark. 30, we said: "While an employee assumes such extraordinary risks caused by the master's or fellow-servant's negligence as are obvious and fully known and appreciated by him, he does not assume extraordinary risks incident to his employment merely because he was familiar with the dangers and character of the work." The doctrine of assumption of risk is predicated upon the knowledge, actual or constructive, of the employee of the risks to be encountered and his consent to be subjected thereto. *Carter* v. *K. C. S. Ry. Co.,* 155 S. W. 638.

In *E. L. Bruce Co.* v. *Yax,* 135 Ark. 480, speaking of the Employers' Liability Act (Act 175 of the Acts of 1913, p. 734) at page 492, we said: "The statute was not intended to and does not deprive the employer of the right to set up the defense of assumption of risk by the injured employee where such injury was the result of the negligent acts of a fellow servant of which the injured employee had knowledge and the dangers of which he appreciated." But the converse is likewise true, and the injured employee does not assume the risk of injury from the negligence of a fellow-servant of which he did not have knowledge and did not appreciate. As we have already stated, the jury might have well concluded that the appellee did not have knowledge of the negligence of his helper and appreciate the danger of such negligence in time to avoid the injury. There was nothing in the testimony to warrant the inference, and

justify the court in declaring as a matter of law, that appellee should have anticipated that his helper might be negligent in the performance of his duties, and that the appellee should have exercised ordinary care to discover and protect himself against such negligence. See *St. Louis, etc., Ry. Co.* v. *Martin, supra; St. Louis, etc., Ry. Co.* v. *Blevins,* 160 Ark. 363.

There is no reversible error in the record. Therefore the judgment is affirmed.