McCallister *v*. LaFargue.

4-3811

Opinion delivered February 11, 1935.

*George E. Pike* and *W. A. Leach,* for appellant.

*A. G. Meehan, M. F. Elms* and *John W. Moncrief,* for appellee.

Johnson, C. J. During the year 1934 and prior thereto, appellant was sheriff and collector of Arkansas County, and at the Democratic primary in August, 1934, he and appellee were rival candidates for said office. Appellee was declared the nominee by the election officials, and as such was duly elected at the general election in 1934, and is now occupying said office. Appellant instituted this contest proceeding immediately subsequent to the second or run-off primary, and appellee applied to this court for a writ of prohibition. See *LaFargue* v. *Waggoner,* 189 Ark. 757, 75 S. W. (2d) 235.

After denial of the writ of prohibition by this court, a voluminous record was made up by the parties, and when contestant, appellant here, indicated to the trial court that he had finished the production of testimony in behalf of appellant, the contestee, appellee here, moved

the court to dismiss the contest and among other reasons therefor alleged:

"After contestant became a candidate for sheriff he unlawfully and wrongfully aided and abetted in the placing of names upon the personal tax books while those books were in his possession and care. He called the assessor and deputy assessor to his office, while these books were in his care, and while he was responsible for them, for the purpose of having the assessor unlawfully and wrongfully add names thereto in the form of supplemental lists. The persons whose names were so added did not, to the personal knowledge of the contestant, make any assessment. Then after contestant had encouraged violation of and violated two fundamental provisions of both the revenue and election laws, he, on the 22d day of June, wrongfully and unlawfully filed a list of electors of Arkansas County with the county clerk. This list embraced and included the names of people who, to the knowledge of contestant, had never been assessed. Names which had been added to the tax books in form of illegal supplements while they were in his office. The names of people to whom contestant had wrongfully and unlawfully issued poll tax receipts certifying that such persons were eligible to vote.

Contestant, in doing these various things, violated provisions of the election laws—fundamental provisions of the election laws—provisions of those laws affecting not only himself but every other candidate for State, district, county and township offices—provisions of the law for the protection of the *bona fide* and good faith voter.

That contestant, having aided in the placing of these names on the tax books, and having over his own affidavit and authentication certified them to the county clerk and to the various election officials, cannot object to any vote cast by any of these persons for appellee. He consented, by his solemn oath, to these people voting. It is an elementary principle of law that no person who aids or participates in the commission of a wrongful or unlawful act can complain of any loss or detriment suffered by him as a result thereof—at least, any loss having a causal connection with the unlawful act in which

he participated. It is also a general rule and principle of the law that no person who consents to any act, be it wrongful or right, can complain of the results of the act. Contestant issued these poll tax receipts announcing to the world and announcing to the election officials that these people had the right to vote. He prepared and filed a list, over his own affidavit and authentication, certifying to the election officials that these people had the right to vote. He cannot complain of the vote cast by any one of them for contestee. He would be estopped by his conduct from so doing.

The testimony adduced in reference to the motion referred to is to the effect that, after the tax books were delivered by the county clerk to the contestant for collection in 1934, 258 poll tax receipts were issued by contestant as sheriff and collector of said county to divers and various persons who had not previously assessed their taxes, and these persons' names were preserved by contestant on a separate list which was subsequently certified by contestant as possessed of poll tax receipts and duly qualified as such. The circumstances attendant upon the execution and delivery of these poll tax receipts were as follows: When a person applied to contestant to acquire a poll tax receipt, and such applicant's name did not appear upon the list certified by the county clerk, contestant would call the county assessor to his office and advise him of the non-assessment of such person, whereupon contestant and the assessor would place the name of such applicant upon the special list being made by contestant, collect the tax of one dollar and the penalty, and thereupon issue the poll tax receipt to the applicant. No assessment of property of such applicant was demanded or effected other than as heretofore stated.

It is agreed between counsel for the respective parties that:

"For the purpose of this appeal it is conceded by both parties that, excluding from the tabulation the votes challenged on the ground that the parties had not been assessed, deducting only such votes as are challenged on the ground that the voter's name does not appear on the

printed list of poll taxes paid, the contestee has a majority of votes cast, but, if the votes challenged on the ground that there had been no assessment are included with the tabulation, then the contestant has a majority of the votes cast.''

It would serve no useful purpose to go into an extended discussion of the assessment laws of this State. It suffices to say that in *Collins* v. *Jones,* 186 Ark. 442, 54 S. W. (2d) 400, we determined that a valid assessment in the manner and form prescribed by act 172 of the Acts of 1929 or § 3738 of Crawford & Moses' Digest was a prerequisite to the right to issue a poll tax receipt in the first instance and also the subsequent act of suffrage thereupon. Under the doctrine announced in the Collins case, *supra,* there can be no doubt but that the 258 persons added by the collector to the poll tax list and by him certified as such, were in fact and in law ineligible to vote at the Democratic primaries in August, 1934.

Appellee contends that it follows from the hypothesis just stated that, since appellant was the tax collector who knowingly and unlawfully issued these 258 poll tax receipts thereby creating the fundamental reason for this contest, he can not take advantage of his own wrongful act, and that, since it is agreed between counsel that appellant can not succeed in this contest except by excluding these 258 votes that this cause must be affirmed. We agree with this contention. Except for the unlawful acts of appellant in knowingly issuing these unlawful poll tax receipts, the conditions here complained of would not have arisen. In 1 C. J. 957, the applicable rule of law is stated as follows:

''The general principles are well settled that the law will not permit a person to take advantage or acquire a right of action from his own wrong; that an illegal or immoral transaction cannot be made a basis of an action by one who is a party thereto; and that, as between parties *in pari delicto,* the law will aid neither, but will leave them as it finds them. In other words, if plaintiff, in order to establish his claim, must rely in whole or in part upon an illegal or immoral transaction to which he is a party, the action cannot be maintained. These principles

are based upon considerations of public policy, and have long been well settled and generally recognized, and, while most frequently invoked in regard to illegal or immoral contracts, they are not restricted to cases of this character. These principles apply both at law and in equity, and whether the transaction is executed or executory, or is *malum in se* or merely *malum prohibitum;* * * * and it is only upon grounds of public policy, and not out of consideration for defendant, * * * in cases where the parties are *in pari delicto.''*

The rule thus stated was approved by us in principle when we quoted from the opinion of Lord Mansfield in *Halman* v. *Johnson,* 1 Cowper 341, as follows: ''The principles of public policy is *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from plaintiff's own stating, or otherwise, the cause appears to arise *ex turpi causa,* or a transgression of the positive law of the country, the court says that he has no right to be assisted. It is upon that ground that the courts go, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff.'' See *Fowler* v. *Hammett,* 162 Ark. 307, 258 S. W. 392.

Moreover, not only is the law one way that no person may profit by his own unlawful act, but it is likewise self-evident that no person should be permitted to create a condition which may be favorable to himself when exercised and then, when it turns out unfavorable, to repudiate the whole transaction. Appellant with full knowledge took his chances on a favorable use of these unlawful poll tax receipts, and the law will not tolerate his blowing both hot and cold upon this unlawful transaction.

It would, indeed, be an anomalous condition to permit tax collectors to knowingly issue spurious and unlawful poll tax receipts and as a candidate gamble upon a favorable vote by the recipient thereof, but, when it turns out that such recipients have voted for a rival candidate, be permitted to bring into question the validity of the vote exercised upon such poll tax receipts. Sound public policy demands that such conduct be condemned in no uncertain terms, and certainly requires that the

courts of the State refrain from lending aid or assistance to such conduct or the enforcement of any imaginary legal or equitable right growing out of it. This we conceive to be the law of all governments and of all ages and without its due enforcement governments can not long endure.

The contention considered and decided being decisive of appellant's right to recover herein, it becomes unnecessary to discuss or decide other questions urged upon appeal.

Since appellant can not bring into question an unlawful condition created by himself and assert the invalidity of those voting upon these invalid poll tax receipts, and since it is stipulated by counsel that appellant must bring this transaction before the courts before he can recover or sustain his contest, it necessarily follows that his contest must fail, and the trial court's judgment conforming to these views must be affirmed.