McEACHIN & McEACHIN v. HILL.

4-4378

Opinion delivered October 12, 1936.

*Reynolds & Maze,* for appellant.

*Carter & Taylor, J. E. Yates* and *Partain & Agee,* for appellee.

BUTLER, J. Appellee, Richard Hill, was in the employ of appellant corporation which was engaged in the construction of a bridge in Franklin county. His duty was to keep a gasoline engine in operation which furnished the power to run the pumps. The pumps and engine were located in an excavation, and the object was to remove water from the same so that the men would be able to work the next day. Appellee worked at night and on the second night of his employment, while acting within the line of his duty, he suffered an injury from the explosion of gasoline and instituted an action against appellant which resulted in a verdict and judgment for him in the sum of $25,000.

It is conceded that the trial court properly instructed the jury as to the applicable law except, it is insisted, that under the undisputed evidence in the case, a verdict should have been directed for the appellant; first, because of failure of appellee to establish his case by substantial evidence, and second, that appellee had assumed the risk as a matter of law.

The injury to appellee occurred while he was engaged in filling a five-gallon container with gasoline from a barrel or tank which rested on a truck about 175 feet

from the pump he was operating. Appellee's purpose was to renew the gasoline in the engine which was done by bringing it in the five-gallon container from the truck and then pouring it into the tank attached to the engine. In order to afford light he used a gasoline lamp which he placed in the vicinity of the truck while withdrawing the gasoline from it. While doing this there was an explosion of some character which threw ignited gasoline on appellee's legs resulting in severe and permanent injury.

The negligence alleged was the failure of appellant to furnish a lantern in good condition; that the lantern furnished was defective in that that part of the mechanism of the lantern called the generator and the parts connected therewith were old, worn and not of proper size to be used in the lantern and not properly fitted therein; that the generator and the parts connected therewith had become clogged with carbon preventing the lantern from properly functioning and causing it to explode thereby communicating flames to the gasoline being handled by appellee. There is some dispute in the testimony regarding the manner in which the lantern came into appellee's possession on the night of the accident and its position with relation to the truck at the time of the explosion. The jury have resolved the disputed questions in favor of the appellee and the testimony tending to support its verdict may be stated as follows:

At about 10:30 p. m. on the night of the accident the lantern was given appellee by his foreman. Other employees had been using it prior to that time in a different part of the work. When the lantern was brought in it appeared to be out of order, and the foreman attempted to remedy its condition, but was unable to do so, but told appellee that he would have to use it that night as it was the only lantern available. So far as it can be determined from the testimony only four lanterns were in use on the job, all known as "Coleman" lanterns, or of similar construction. Shortly after the accident these lanterns were taken to a mechanic in Fort Smith who found all of them defective, three of them being without generators and the other, identified by him at the

trial as one of the four brought to him for inspection, was, at the time when brought, defective with relation to the generator which he replaced with a new one.

A witness, who had done mechanical and black-smithing work for the appellant some three or four weeks before appellee's injury, but who was not in appellant's employ at that time, testified that it was his duty, among other things, to keep the lanterns going. He stated that the proper gas to use in the lanterns was white gas. He discovered, while filling the lanterns, that the gasoline was not of that character. It was discolored and apparently, by some means, had had an addition of some other substance. Witness stated that they would have to get some new gasoline, but this was not done until most of the adulterated gasoline had been used. This caused the generators to clog from deposits of carbon rendering it necessary to clean out the holes in the generators which made these openings larger than they should have been. The effect of this caused the gasoline to spew and blow out. All of the lanterns on the job were affected, and all had to be cleaned out. When this was done, witness told the foreman they would have to have new generators. New generators were obtained, but they did not fit the lanterns in use.

Mr. Berry Collins, who qualified as an expert with relation to the structure and operation of "Coleman" lanterns, testified that they were considered the most efficient in general use and that the lantern exhibited (supposed to have been the one used by appellee on the night of the accident) was not a "Coleman" lantern, but similar in structure, there being no material difference between the two. This witness described a "Coleman" lantern, as follows: "A Coleman lantern operates under pressure, has a generator, a mixing tube and a tank sealed air-tight and a pump to pump air in the tank. The generator is a piece of tube with wicking or something in it to hold that gasoline from flooding the mantles and it has a strainer. The heat of the generator boils the gasoline into a vapor and it vaporizes into a mixing tube and it is mixed with a certain per cent. of air and burns on the mantles a perfectly dry gas if the genera-

tor is good and a good grade of fuel is used. The hole in the generator is exactly the right size to furnish the right amount of gas. The generator is close enough to the mantles to boil the gasoline. That is the function of all gasoline machines that burn under pressure. The mantles heat the generator and the generator furnishes the gas to the mantles, that is carried around and around.'' This witness further stated in effect that if a lantern was in good condition there would ordinarily be no danger in setting it lighted close to where gasoline was being changed from one container to another. He stated that generators are made of soft brass and when the holes become clogged by carbon the insertion of a point of a needle would tend to enlarge them so as to cause an excess amount of gasoline to come through and pass beyond the point of incandescence and out of the lantern creating danger of an explosion, but not necessarily of sufficient violence to shatter the lantern.

We think there is abundant evidence that the lanterns in use at the work of appellant on the night of the accident to appellee were not in proper condition and justified the jury in the conclusion that their use in such condition was negligence. It remains to be seen whether there is evidence tending to show that such negligence was the proximate cause of appellee's injury.

Appellee stated that when he was preparing to fill his can he placed the lighted lantern some distance from the truck which he estimated at 25 or 30 feet, that a funnel was furnished for the purpose of removing the gas from one container to another, but this was broken and could not be used; that he had about filled the can when he heard a noise at the lantern which he designated as a ''puff,'' and saw flame come on its outside; that he was immediately enveloped in flaming gasoline. There was some question as to which way the wind was blowing and its degree of force, but this was a circumstance which the jury considered in determining the cause of the explosion at the truck. When it is remembered that the testimony is practically undisputed to the effect that there would be but little, if any, danger from a gasoline lantern in proper condition, the inference is justly to be

drawn that there was flaming gasoline projected in some manner from the lantern which ignited the gasoline at the truck.

On the question of assumption of risk little need be said. The court fully and fairly instructed the jury on this issue, and it cannot be said as a matter of law that appellee had such peculiar knowledge of the danger attendant upon the use of a defective lantern as to make that danger so obvious that one of his information would not expose himself thereto. The doctrine of assumed risk is predicated upon the knowledge of the servant of the risks to be encountered and his consent to be subjected thereto. *Chicago R. I. & P. Ry. Co.* v. *Daniel,* 169 Ark. 23, 273 S. W. 15. It is not shown that appellee had any knowledge of, or was accustomed to use, gasoline lanterns for any considerable time. He had only worked one night, and before that his work was such as would not acquaint him with facts from which he might reasonably conclude there was any danger in the use of a defective lantern and he testified that he did not know there was any such danger. He had the right to rely upon the judgment of his employer and to assume that he would not be subjected to any extraordinary danger.

Appellant suggests that certain incompetent evidence was admitted over its objection and exception which calls for a reversal of the case. This is the testimony relating to the use of improper fluid in the lanterns. It is insisted that no allegation was contained in the complaint relative to the use of such fluids and that the amendment which alleged such improper use had been withdrawn. The evidence did not relate to the character of gasoline used at the time of appellee's accident, but only to such as was used prior thereto which explained in part the defective condition of the lantern. That is to say, a few weeks before the accident improper gasoline was used in the lantern which necessitated the cleaning out of the openings in the generator resulting in increasing their size. The evidence was competent for this purpose, and did not tend to indicate the character of gasoline in use at the time of the accident.

There remains to be considered the contention that the verdict is excessive. The appellee was 26 years old at the time of his injury. He was not fitted by education or experience to earn a livelihood except by manual labor. At the time of his accident he was earning forty cents per hour which appears to be a less sum than he was ordinarily capable of earning. There is evidence of a substantial character to the effect that appellee's injuries are such as to permanently prevent him from earning wages by manual labor. In addition to this, the evidence leaves no doubt as to his having suffered intense pain, and that he will, in the future, suffer much discomfort. Taking into consideration his age, earning capacity at the time of his injury, and the handicaps which he will suffer during the remainder of his life, we cannot say that the verdict is excessive.

It follows that the judgment of the trial court is correct, and is therefore affirmed.