ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. MARTIN.

Opinion delivered June 16, 1924.

1. COMMERCE—FEDERAL EMPLOYERS' LIABILITY ACT—APPLICATION OF LOCAL ACTS.—In an action under the Federal Employers' Liability Act, local statutes imposing duties and liabilities are not applicable.

2. MASTER AND SERVANT—RULE AS TO SWITCHING OF CARS.—In an action for death of a railroad yard clerk crushed between cars by reason of negligence in kicking a car on a yard track without manning it, a bulletin issued by the yardmaster to engine foremen directing that helpers ride cars cut off into the yard tracks held a general rule, though it referred to the prevailing evil of subjecting merchandise cars to rough handling.

3. MASTER AND SERVANT—ABROGATION OF RULE A JURY QUESTION.— Whether a rule as to manning cars kicked into the yard tracks had been habitually disregarded and therefore abrogated held a question for the jury.

4. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—Whether a yard clerk, by walking through the yards, assumed the risk of nonobservance of a rule as to manning of cars kicked into yard tracks held for the jury, in view of the conflict of evidence on the subject.

5. MASTER AND SERVANT—ASSUMED RISK—EXTRAORDINARY DANGER.— Where an employee is aware of the negligence of his employer

or of a fellow-servant, and appreciates the danger arising therefrom, he is deemed to assume the risk of such danger, but he is not bound to anticipate or exercise care to discover extraordinary dangers arising therefrom.

6. MASTER AND SERVANT—ASSUMED RISK.—While an employee assumes such extraordinary risks caused by the master's or fellow-servant's negligence as are obvious and fully known and appreciated by him, he does not assume extraordinary risks incident to his employment merely because he was familiar with the dangers and character of the work.

7. MASTER AND SERVANT—ABROGATION OF RULE.—Habitual violation of a rule promulgated by a master does not abrogate it, unless so open and long continued as to raise the presumption that the employer or those appointed by him to enforce it consented to the abrogation or knowingly acquiesced in it.

8. MASTER AND SERVANT—NEGLIGENT KILLING—EVIDENCE.—In an action for the death of a yard clerk, evidence *held* to sustain a finding for plaintiff on the issue of negligence in kicking cars down the yard tracks without manning them.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; affirmed.

*J. R. Turney, A. H. Kiskaddon,* and *W. T. Wooldridge,* for appellant.

Appellant's motion for a directed verdict should have been sustained. The decedent's fellow-employees owed him no duty, in switching the cars, to maintain a lookout for his safety, in the absence of a rule requiring it. An employee assumes the risk of injury arising from the nature of his employment, as well as from the particular methods and ways in which the work is carried on. 145 U. S. 418; 201 Fed. 54; 144 Fed. 56, 76 C. C. A. 214; 276 Fed. 187; 178 N. W. 887; 158 Fed. 92. In this case the dangers were not obscure but were perfectly obvious, and the case comes within the exception to the rule that the servant does not assume risks which are not apparent and of which he knows nothing. 191 U. S. 64, 48 L. ed. 96. The decedent had to look out for his own safety, as appears by the undisputed testimony to the effect that the switching crews operating in the yards paid no attention to yard clerks and gave them no warning as they passed through the yards in the performance

of their duties, and decedent well knew these facts.   179 Pac. 191.  See also 121 N. E. 403; 118 Ark. 304; 95 Ark. 562, 164 S. W. 857.   From the foregoing authorities it is submitted that as a matter of law there is no merit in the contention that the death of plaintiff's intestate was due to the negligence of his fellow-employees in kicking the car onto the track without having it accompanied by one of the switching crew.   The bulletin introduced in evidence imposed no duty on the switching crew to maintain a lookout for decedent.   Its obvious and only purpose was to protect freight in cars which was liable to be injured by severe impact, and the rule is limited to merchandise cars.   161 Mass. 125; 66 Iowa, 346.   If it had originally been intended to require that cars kicked in on switch tracks be manned, and intended for the protection of yard employees, that purpose was subsequently abrogated by constant and open violation of the rule. 32 S. W. 799; 77 Ark. 405; 84 Ark. 377; 117 Ark. 504. Decedent, being aware of the continuous and universal violation of the bulletin, assumed the risk arising therefrom, even if it be granted that the bulletin imposed an absolute duty on the switching crew to man a car kicked in on a switch track.   233 U. S. 492; 245 U. S. 441; 254 U. S. 415; 271 Fed. 268; 160 Ark. 362; 161 Ark. 122.

*Rowell & Alexander*, for appellee.

The lookout statute applies to railroad yards as well as to other places, and is for the benefit of employees as well as others.   88 Ark. 204; 83 Ark. 61; 80 Ark. 528; 100 Ark. 476.   It is far-fetched to say that the switchmen owed decedent no duty.   The extraordinary danger to which decedent was exposed is shown, first, because the kicking in of the box-car at excessive speed, without a switchman in control, and without a switchman present on the car at the point where decedent went through, for the purpose of making the joint, was a violation of the bulletin introduced in evidence; and, second, because the car must have been kicked in at terrific speed, to cause four standing cars, when struck, to suddenly close a space of four or five feet and catch decedent therein, all of

which was a manifestation of negligence in all respects, and misled decedent. He had the right to assume that the switchman would conform to the requirements of the rule, and when he approached the track in question, a merchandise track, and saw no switchman on the car at the opening, he had the right to presume that there was no danger at that point. The risk arising from the violation of the bulletin was not assumed by decedent. 77 Ark. 367; 29 C. C. A. 374; 43 S. W. 510; 42 N. E. 112. And certainly he assumed no extraordinary risk such as was requested in instruction numbered 4 requested by appellant. 229 U. S. 119. Assumption of risk was an affirmative defense, and the burden of proof was on the defendant to show it, unless it was shown by plaintiff's testimony. 140 Ark. 155.

McCULLOCH, C. J. Appellee's intestate, R. C. Martin, while working in the service of appellant, was crushed between two freight cars in the Pine Bluff yards, and was fatally wounded. He lived about thirty-six hours after the injury, and suffered great pain. He left a widow and children, and this is an action against appellant, instituted by the administrator of the decedent's estate, to recover under the Federal Employers' Liability Act. It is conceded that the injury to decedent occurred while working for appellant in interstate commerce, and that, if liability on the part of appellant exists at all, it falls within the terms of the Federal statute.

Deceased was, according to the undisputed evidence, working in the yards as clerk, his duty being to check cars and to weigh them when called upon by the foreman of the switch crew to do so. The injury occurred shortly after ten o'clock on the night of October 10, 1922.

The yard office was situated north of the main line, toward the eastern end of the yard, and the track scales upon which cars were weighed were situated toward the western end of the yard and south of the tracks, which ran parallel with the main line. There were twelve of these tracks between the track scales and the main line.

The yard-clerk, when on duty, usually remained in the yard office until called or directed to do particular work. When a car was placed by the switch crew on the scales to be weighed, a signal call to the yard clerk would be given from the engine by blasts of the whistle, and it was the duty of the yard-clerk to proceed immediately to the scales to weigh the car. It was necessary for the yard-clerk to cross the intervening tracks between the yard office and the scales. Decedent Martin received his fatal injury while he was crossing track No. 7, proceeding on his way pursuant to a call from the yard office to the scales to weigh a car. There were four cars, coupled together, standing on track No. 7, and another single car within about four feet of the end of the string of four cars. As Martin passed along this space between the end of the single car and the end of the string of four cars, a car which had been "kicked" in on track No. 7 by the switch crew came violently in contact with the other end of the string of cars, and threw them against the single car, catching Martin between the two cars and crushing him. It was dark in the yards at the time, and Martin had a lantern on his arm. These facts are all undisputed, and it is also undisputed that the car "kicked" in on the track was not in charge of any one, but was rolling down the track at a rapid speed, without any one on it to control its movement.

None of the employees engaged in the switching operations saw Martin as he passed along the yard and entered the space between the cars, and the first that any of them knew of Martin's dangerous situation or injury was when his groans or exclamations were heard after the impact of the cars.

The sole charge of negligence involved in the case is the act of the switching crew in "kicking" the car by a "flying switch" into track No. 7 and causing it to roll down the track at a rapid speed, without being manned by some one to control its movement.

In submitting to the jury the issue of negligence there was no cognizance taken of the "lookout" statutes of the State, which apply to the operation of switching

cars in railroad yards (*St. L. I. M. & S. Ry. Co.* v. *Puckett,* 88 Ark. 204), no mention was made in the instructions of the court as to any statutory duty in that respect of the railway company. The action being based on the Federal statute, *supra,* local statutes imposing duties and liabilities are not applicable. *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492; *St. L. I. M. & S. Ry. Co.* v. *Steel,* 129 Ark. 520.

It is earnestly insisted that the evidence is not sufficient to sustain the charge of negligence, in that, according to the method in vogue of switching cars in the yards at Pine Bluff, there was no duty resting upon the switching crew to man the freight cars "kicked" in on the various tracks, and therefore no negligence in failing to observe that precaution.

It is also contended that the deceased was fully aware of the custom with respect to "kicking" the cars onto sidetracks without manning them, and that he assumed the risk, should be held as a matter of law to have assumed the risk.

It was proved at the trial that, nearly two years before the date of the injury of Martin, the yardmaster issued a bulletin, directed to engine foremen, which prescribed a rule of conduct in switching cars. The bulletin was dated January 17, 1921, and read as follows:

"To all Engine Foremen: Repeated attention has been called to engine foremen as to the rough handling of equipment in Pine Bluff yard. Do not see where you are in any way making any headway, as we are continually receiving complaints account concealed damage in merchandise cars, etc., on cars originating here in Pine Bluff and on cars passing through Pine Bluff yard, which are switched in breaking up trains. Effective this date, instruct your engine foremen that the helpers 'go high' on these cars that are cut off, and ride them into tracks. We have got to put an end to this rough handling of equipment in Pine Bluff yards. Acknowledge receipt and understanding of these instructions, and issue instructions to all your switch engine foremen, and secure their acknowledgments, as I am personally going to check these

foremen up to see that these instructions are complied with.   Acknowledge receipt with return of this letter.

"Yours truly,

"CC: Mr. A. Holmes.          (Signed) W. D. Badgett."

The contention of appellant's counsel is that this bulletin did not attempt to establish a general rule with reference to the conduct of the switchmen in "kicking" in cars, but merely referred to the protection of merchandise cars.   We cannot agree with counsel in this contention.   It is true that the bulletin makes reference to the prevailing evil of subjecting merchandise cars to rough handling, but it states unequivocally a direction that helpers must "go high" on the cars "that are cut off, and ride them into tracks."   This rule is fairly susceptible only to the interpretation that the cars that are cut off and "kicked" onto the tracks must be manned by men riding them into the tracks.

It is next insisted that this bulletin, or rule, was wholly and habitually disregarded to the extent that it was abrogated, and that this is shown by uncontradicted evidence.   It must be conceded that there is much evidence of strong probative force tending to show that this rule was totally disregarded and was thereby abrogated, but it cannot be said that this testimony was uncontradicted, and we find evidence in the record which justifies the conclusion that it was always regarded as the duty of switchmen to accompany the cars to the place where they were to be "jointed up," or, at least, to have men on duty to see "that the cars go in the clear and that the couplings are kept open so that the joints will be made right, and to watch and see that the cars don't run back, and to watch out for any other object that might be across the track or any obstruction on the track, or for any carman that might be working on the cars, and to look out for any danger signals."   The court did not err therefore in refusing to take this question from the jury.

The same may be said with respect to the contention that the undisputed evidence shows that the risk was assumed.   If the rule was not abrogated, as some of the

evidence tended to show, then it cannot be said as a matter of law that Martin, the yard-clerk, by walking through the yards assumed the risk of the danger created by the nonobservance of the rule by the switchmen. If the rule had not been abrogated, Martin had the right to assume that it would not be disobeyed, and he did not assume the risk of possible dangers arising from disobedience of the rule.

Other assignments of error are predicated upon the objections made to the court's charge to the jury. The court gave, over appellant's objection, instruction No. 5, which reads as follows:

"You are instructed that it is not the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

We are of the opinion that this instruction is correct. An employee is not bound to anticipate or to exercise care to discover "extraordinary dangers that may arise from the negligence of the employer or those for whose conduct the employer is responsible." If the employee is aware of the negligent act of his employer or a fellow-servant, and appreciates the danger arising therefrom, he is deemed to assume the risk of such danger by proceeding, but, as before stated, an employee is not bound to anticipate extraordinary dangers arising from the negligence of his employer or a fellow-servant.

Appellant requested the court to give instruction No. 4, and the court modified it by striking out the word "extraordinary" where it appears and inserting the word "ordinary." The instruction as requested reads as follows:

"If you find from the evidence that the said Martin had been working for defendant company, in its yards

at Pine Bluff, for a number of years, and that he was familiar with the dangers and character of his work in the yards, and the manner and custom of the switching of the cars and the making up of the trains therein, and if you further find that he made no objections to the manner and danger of his work and the manner and danger of the switching and handling of the cars by the switching crews, to his superior or superiors, and continued in the performance of his work and duties, then you are instructed that he assumed, by virtue of his employment, the extraordinary risks incident to his employment. So, if you find from the evidence that the said Martin was injured by the extraordinary risks of his employment, then plaintiff cannot recover, and you will so find.''

This modification was, we think, correct, for it would have been erroneous to tell the jury that, because the injured employee was familiar with the dangers and character of his work in the yards he assumed, by virtue of his employment, extraordinary risks incident thereto. It is true, as we have already said, that, where an employee is aware of the negligence of his employer or fellow-servant, and appreciates the danger, he assumes the risk, even though it is an extraordinary danger created by negligence. But this instruction goes farther than that and tells the jury that, merely because the employee was familiar with the danger and character of his work, he would assume the extraordinary risk incident to his employment. This instruction entirely ignored the fact, which could have been and doubtless was found by the jury, that there was a prevailing rule requiring the switchmen to man the cars so as to control them, or to provide other means for that purpose, and, under those circumstances, an extra hazard created by the negligence of the switchmen in failing to comply with that rule would not be assumed by another employee, who had not become aware of the danger before his injury. Counsel invoke the well-established rule of law that the servant does assume the extraordinary risks caused by the mas-

ter's negligence or negligence of a fellow-servant which is obvious and fully known and appreciated by the ·servant, but the trouble with this instruction now under consideration is that it misapplies that principle and brings the injured servant within the application of the doctrine of assumed risk, even where he is injured by reason of the negligence of a fellow-servant without knowledge or appreciation of the danger.

Finally, it is insisted that the court erred in refusing to give appellant's requested instruction submitting the question of abrogation of the rule established by the bulletin put in evidence, and in failing to give any other correct instruction on that subject.   The instruction requested by appellant reads as follows:

"7.  You are instructed that, if you find from the evidence that the bulletin introduced in evidence in this case, signed by Badgett, was not in force after the witness Tucker became ·yardmaster, and that said bulletin was habitually violated, then such bulletin was abrogated, and would not be in force after such habitual violation or failure to enforce the same."

The court correctly refused to give this instruction, for the reason that it was too vague, and failed to give a correct rule for determining whether or not the rule had been abrogated.  Habitual violation of a rule does not constitute an abrogation unless it is done so openly and continues for a long enough period to raise the presumption that the employer, or those appointed by him to enforce the rule, consented to the abrogation, or knowingly acquiesced in it.   *St. L. I. M. & S. Ry. Co.* v. *Caraway,* 77 Ark. 405; *St. L. I. M. & So. Ry. Co.* v. *Dupree,* 84 Ark. 377; *St. L. I. M. & So. Ry. Co.* v. *Blaylock,* 117 Ark. 504.

We do not discover any error in the proceeding, and, as the verdict is supported by legally sufficient evidence, the judgment is affirmed.

Note:  Petition for certiorari in the above case was denied by the Supreme Court of the United States.  (Reporter).