Mississippi River Fuel Corporation *v.* Morris.

Opinion delivered February 9, 1931.

*H. L. Ponder* and *John L. Bledsoe,* for appellant.
*Richardson & Richardson,* for appellee.

MEHAFFY, J.   This action was instituted by Harlen Morris, appellee, against the Mississippi River Fuel Corporation to recover damages caused by the alleged negligence of the appellants.   Appellee alleged that he was in the employ of the appellant at the time of the injury, engaged in leveling and grading the grounds immediately around the office and plant of appellant, and that he was acting under the direction and control of appellants and its agents and employees.

The grader used in leveling and grading the grounds was a metal grader with a metal handle protruding to the rear from the center.   The grader was pulled by two mules or horses.   In the loading of the grader, an extra team was used, which, after the grader was loaded, was unhitched or released and moved to the side, thereby permitting the grader to be pulled forward to where it was unloaded.   The appellee was handling this extra team, and he alleged that, after he unhitched the extra team from the grader and stepped aside to permit the grader to be pulled forward, the driver of the team pulling the grader, without notice or warning to appellee, negligently and carelessly began whipping the team which was hitched to the grader, causing the team to suddenly and quickly turn around, and causing the handle of the grader to strike him about his legs, inflicting painful and severe injury to his legs.   He alleged that prior to the injury he was an able-bodied young man, earning $3 a day and that as a result of his injury he was rendered incapable of following his usual occupation; that his injuries were permanent; that he was required to spend large sums of money for treatment; and that he suffered severe pain and would continue to suffer throughout his life, and asked for damages in the sum of $3,000.

Appellant filed a demurrer, which was overruled, and then filed an answer in which it denied all the material

allegations in appellee's complaint, and pleaded contributory negligence as a defense. Appellant in its answer also alleged that appellee was in the employ of Morrison & Taylor, independent contractors, and that these contractors had full charge of the work.

Harlen Morris, appellee, testified that he was working at the gas plant belonging to appellant at Biggers, Arkansas, in November, 1929, under an employee named Edwards, and was at the time driving what they called the "snatch team." The team belonged to Roy Morrison, who paid appellee his wages and who employed him. He was told by Morrison to do what appellant's foreman told him to do. He was at work there in the spring and went back in the fall and had been there about a month and a half before he was injured. There were about fifteen teams working at the time. Appellee was handling the extra team, the one that was hooked on to pull until the grader was filled. It is heavy to pull when filling and required an extra team.

When the team got up on the bank, the extra team was unhitched, and the regular team took the loaded grader on to where it was emptied. There was a handle extending back from the back end of the grader, about six feet long, and, when the grader is loaded, this handle sticks out parallel with the ground about eighteen inches high.

Mr. Edwards was the foreman, but appellee was working under Mr. Bush. Edwards was a foreman under Mr. Bush. Bush had told appellee how to use the extra team. Bush was foreman on the job, and worked for the Mississippi River Fuel Corporation. Appellee stepped around to the left after releasing the extra team, and the iron bar came around and hit him on the leg. When he would unhook the extra team from the grader, he would step back after it passed and hook on to another grader. After he would unhook the team, the man driving the team hooked to the grader should have gone straight ahead for about 40 feet, and the appellee would hook on to another grader.

At the time appellee was injured, Frank Wilson, who was working for the Mississippi River Fuel Corporation, was driving the team hitched to the grader that injured appellee. Appellee said that Wilson was careless and not paying attention to what he was doing, and, after appellee had unhooked the team and stepped to one side, Wilson was beating his team, jerking them around and slashing them, and appellee did not see it until the bar hit him and knocked him down. The team turned to the right, nearly all the way around, and the grader turned with them. The wheel went into a ditch and threw the whole weight on appellee. The safe way for Wilson to have done was to go out past appellee and then turn off, but he turned right at appellee. Wilson and the other drivers had been driving straight ahead and turning after they passed him.

After the injury appellee was carried to Biggers and next day to Hoxie and treated by a physician. He was confined to his bed for two months. His knee cap was knocked off and the joint burst. It still swells and turns black and jumps out of place. He cannot walk over three or four blocks without sitting down, and has been unable to do any work since the injury except hauling with a team. Before the injury he weighed 192 pounds and now weighs 160. He gets $1 a day for driving a team, and the jolting of the wagon hurts him and causes his leg to continue to swell. He used crutches for about three months. He is 22 years old and married, but has no children.

At the time of the injury, he was driving one of the teams of Mr. Morrison. Mr. Morrison paid appellee, but the Mississippi River Fuel Corporation paid Mr. Morrison. None of his checks came from the Mississippi River Fuel Corporation.

Frank Wilson was driving a team that belonged to Mr. Morrison. Witness did not see Frank Wilson whipping and jerking his team. Witness was behind him at the time. He saw him as he was falling over; did not

see Wilson slashing the team before he was hit, but did afterwards.

When appellee went to work, Mr. Morrison told him to do what Mr. Bush said to do. After witness cut loose from this grader, he stepped aside to the place he was in the habit of stepping to; had never been hurt before, and no teams had ever turned around at that particular place before.

Burl Bushong testified that he was working for appellant; that Mr. Edwards was the foreman, and he was between 50 and 100 feet from Morris when he got hurt; saw Frank Wilson driving in, and saw Morris unhook his grader, and about that time Frank Wilson began fighting and jerking his team, and the team wheeled clear around and turned the scraper suddenly around, and the bar struck Morris on the leg, and he went down.

Wilson was working under the directions of Mr. Edwards, the foreman for the appellant. Edwards directed them what to do and when to do it. Wilson should have waited until the man driving the snatch team unhooked and got out of the way, and, after the snatch team was unhooked and the driver stepped to one side, Wilson should have pulled ahead past the snatch team and turned out. He wheeled right around and turned right there. It was customary to pull straight ahead past the snatch team and pull out. Witness was employed by Dr. Taylor, who was a partner of Morrison's, and Morrison was on the job with several teams.

Dr. Morrell testified as to the injury and the extent of it. He said the injury was likely to be permanent; his bill was $142 to date, and appellee is still under his treatment, and will need medical treatment for a long time.

Homer Parrish also testified about appellee's injuries and about his health before the injury. Counsel agreed that under the American Mortality Tables appellee had a life expectancy of 41.53 years, and that he was 22 years of age at the time.

Frank Wilson, who was driving the team at the time appellee was injured, testified that he was driving a team hitched to the wheel scraper; they were filling low places around the gas plant, and leveling up the grounds. Witness had been at work there for two or three days. Mr. Edwards had supervision of how the dirt was placed. When the grader was loaded, witness would drive up and turn to the right; that appellee, when he cut loose, stepped out to the left. It was a bad place to turn out, and witness drove up even with appellee and turned to the right. It was rough going out, and there was a little hole that the wheel dropped into, and made the handle wobble out and strike him. He walked between appellee and witness' team. Appellee was driving a snatch team; would unhook and pull out to the side when scraper was loaded. At the time appellee was hurt, witness could not say what he was doing. Witness was driving a pair of mules, and does not think he was whipping them at the time. He drove them as he usually did, and they did not wheel around quickly on account of beating, jerking, or slashing them. The long iron handle was sticking out behind, and, if appellee had been paying any attention to his business, he could have seen it.

Morrison hired witness, and told him that Mr. Edwards would tell him what to do, and Edwards told him where to get the dirt and where to put it. Morrison never told witness where to get the dirt or where to put it, and he never heard Morrison telling a man what to do or how to do the work; Edwards did that. Was turned about half around when he hit Morris.

Chrisley Smith testified that he was working at the gas plant driving a team at the time Morris was injured; did not see him at the time he was injured; does not know which way Morris was looking, but, if he had been looking at the scraper, he could have seen everything and got out of the way.

C. A. Edwards testified that he was working for the appellant, and that it was his duty to look after the teams

and dirt, and to see that it was put where they wanted it. He had nothing to do with hiring the men who drove the teams or discharging them or paying them. He had to see that the dirt was put at the right places and give instructions to Morrison and the other men. Morrison hired the men that worked for him and paid them, and the appellant hired Morrison and paid him. This witness described also how the men performed their work, and said that Morris was supposed to cut out and stay to one side until the wheeler passed. Witness instructed Morris to unhook and cut out and stay there until the team pulling the wheeler cut out. It was his duty to pull to one side, get to a place of safety, and remain there until the wheeler team turned out. There was nothing to obstruct Morris' view, if he was looking, and it was his duty to look out for his safety, and he had been instructed to do so. Morris seemed to be awkward with his team, and not familiar with handling a team. Morrison hired Wilson, but witness told him where to work, and also told Morris what to do.

Charles Parrish testified that he was working for appellant at the time appellee was injured, and was present at the time of the injury; saw Morris detach his team from the scraper Wilson was driving, and Wilson then drove ahead just a little ways and turned to the right. This was the ordinary thing to do. Wilson did what he was supposed to do. Morris, after he detached his team, stepped to one side unthoughtedly and got hit; did not see Wilson whip his team. He did not jerk or slash it, did not rush it up any. Wilson did not do anything that was negligent that witness saw; drove his team in the ordinary way; has occasionally seen him jerk and abuse his team. At the time of the injury Wilson turned out at the proper place. Morris was not standing in his usual place.

J. R. Morrison was present, but did not notice Frank Wilson rushing up, slashing, or whipping his team; did not see any team whipped or jerked around there; did

not see Wilson's team turn around quickly. Witness was working for appellant at $7 a day for team and man. Does not know whether Wilson's team turned out at the usual place or not; just saw Morris fall.

Burl Bushong was recalled and testified that, if Wilson had pulled straight up in the usual way, the accident would not have happened; saw Wilson fighting his team when he was loading the scraper.

The jury returned a verdict for $1,500, and judgment was entered for this amount. Motion for a new trial was filed and overruled, and this appeal is prosecuted to reverse the judgment of the circuit court.

The appellant insists that there can be no recovery because appellee was employed at the time of the injury by Morrison & Taylor, and that they (Morrison & Taylor) were independent contractors.

''The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor." 14 R. C. L. 67; *W. H. Moore Lumber Co.* v. *Starrett,* 170 Ark. 92, 279 S. W. 4.

In the case above mentioned, this court said: ''An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work." Thompson on Negligence, vol. 1, p. 570; *J. W. Wheeler Co.* v. *Fitzpatrick,* 135 Ark. 117, 205 S. W. 302; *St. Louis I. M. & S. R. Co.* v. *Gillihan,* 77 Ark. 551, 92 S. W. 793.

Many other cases have been decided by this court involving the questions of master and servant and independent contractors, and all of them hold in effect that an independent contractor is one who renders service in the course of an occupation representing the will of his

employer only as to result of his work, and not as to the means by which it is accomplished, and it is generally held that the decisive question is, had the employer or the contractor the right to control the conduct of the person doing the work. If one contracts to do a certain work for another, being responsible for the result only, and performing the work in such manner and by such means as the contractor may decide, in other words, if he has control and management of the work, and is only responsible for the result, he is an independent contractor, the vital test being the right to control.

The witnesses, including appellee, testify that, while they were hired and paid by Morrison or Taylor, they were told by whoever hired them to do what the Mississippi River Fuel Corporation foreman told them to do.

The appellee testified that the team he was driving belonged to Morrison; that Morrison employed him and paid him wages, but that Morrison told him when he employed him to go ahead and do what the Mississippi River Fuel Corporation and its foreman told him to do. All the witnesses testified that they were under the direction and control of the foreman of appellant. There is no evidence in the record indicating that Morrison was an independent contractor, or that he had any control of the employees, and Morrison himself testified that he hired his team to the Mississippi River Fuel Corporation; that he got $7 a day for team and man. He told the men when they reported to work to get the teams hooked up and get to work, and it is undisputed by Morrison that he told the persons who drove his teams to do what the foreman of the appellant told them to do.

Edwards, the representative of the appellant, testified that his duties were to look after the teams and to see that the dirt was put where he wanted it. When asked if Morrison had anything to do with the work done, Edwards answered, ''I was the man that did that.''

The undisputed evidence shows therefore that the appellant was in control of the work and laborers, and

that Morrison had nothing to do with it. He had no contract with the appellant except to hire to it a team and driver for $7 a day.

Appellant, however, contends that the testimony on the part of the witnesses shows that plaintiff was employed by Morrison and was not a servant of the Mississippi River Fuel Corporation, and that it therefore is not liable to him for the injury he received.

The liability of a master for injury caused by the negligence of a servant depends upon whether the master had the right and it was his duty to control the servant. Whoever has the right to control the actions of another must answer for the wrongs done by the persons he has a right to control.

This court said: "Ward's right to direct and control the acts of Hawkins (the convict) is the important circumstance. The facts of the arrangement whereby he obtained that right are wholly unimportant. This is consonant to the general rule governing the relations between master and servant and the liability of the master for the acts of the servant, * * * the ultimate test being the right or duty to control." *St. L. I. M. & S. R. Co.* v. *Boyle,* 83 Ark. 302, 103 S. W. 744; *Taylor* v. *Ark. Light & Power Co.,* 173 Ark. 868, 293 S. W. 1007.

It is next contended by appellant that the appellee assumed the risk. When one enters the employ of another he assumes all the usual risks and hazards ordinarily incident to the employment, and the master is not liable for injury resulting to the servant if the injury to the servant was caused by one of the ordinary or usual risks or hazards of the employment; but the servant does not assume the risk of the negligence of the master for whom he works or any of its servants. *Aluminum Co. of North America* v. *Ramsey,* 89 Ark. 522, 117 S. W. 568; *Southwest Power Co.* v. *Price,* 180 Ark. 567, 22 S. W. (2) 373; *Chicago R. I. & P. Ry. Co.* v. *Allison,* 171 Ark. 983, 287 S. W. 197; *Western Coal & Mining Co.* v. *Burns,* 168 Ark. 976, 272 S. W. 357; *Chicago R. I. & P. Ry. Co.* v.

*Daniel,* 169 Ark. 23, 273 S. W. 15; *St. Louis Southwestern R. Co.* v. *Martin,* 165 Ark. 30, 262 S. W. 982.

In this case the appellee testified that another employee of the appellant slashed and whipped his team and caused them to turn suddenly and hit appellee's leg. He was corroborated by another witness. In other words, the evidence on the part of the appellee showed that the injury was caused by the negligence and .wrongful conduct of a fellow-servant, and this risk of course was not assumed.

Appellant's objection to instruction No. 1, given at the request of the appellee, is based on the ground that the question of fellow-servant has no application in this case. It is contended that the appellee was not in the service of the appellant. We have already seen that appellee and Wilson were in the service of the appellant; they were fellow-servants, because the appellant had the right and the duty to control the acts of both of them.

It is next contended by appellant that there can be no recovery because appellee's own negligence contributed to the injury. The evidence on the part of the appellee tends to show that he acted in the usual way by unhitching his team and getting to one side, and there would have been no danger if Wilson had driven his team on in the usual way. Both these questions, however, that is, the question of the negligence of Wilson and the contributory negligence of appellee, were questions for the jury, and the jury decided these questions against the appellant.

The appellant bases its argument on the claim that appellee was employed by the partnership, and not by the corporation. If appellee had been in the employ of the partnership, the fellow-servant's doctrine would not apply, but we have already seen that both appellee and Wilson were in the employ of the corporation.

Objection is made to instruction No 3, but the court correctly stated to the jury in that instruction that in determining in whose employment the plaintiff was and

the other workmen, they should determine under whose orders and instructions they were working at the time, and that, if they were working under the orders and directions and instructions of the defendant, Mississippi River Fuel Corporation, and its authorized agents and employees, they would be servants of the defendant, although their wages were paid by other parties. This is a correct declaration of the law. The test is the right to control, and this was properly submitted to the jury.

We find no error, and the judgment is affirmed.