Missouri Pacific Railroad Company *v.* Montgomery.

4-2741

Opinion delivered November 21, 1932.

538

*Brundidge & Neelly, Thos. B. Pryor* and *H. L. Pon-der,* for appellant.

*Pace & Davis* and *R. W. Robins,* for appellee.

MEHAFFY, J.   The appellee, Alex. Montgomery, on June 7, 1930, was in the employ of the appellant, Missouri Pacific Railroad Company, as a brakeman on a freight train running from Monroe, Louisiana, to El Dorado, Arkansas.   While in the service of appellant as such brakeman, he was under the direction of the conductor, who was in charge of the train, getting out a switch list, sitting down at the conductor's desk in the caboose.   He had been called by the conductor and directed to do this work. While engaged in this work, he was thrown against the desk by a violent jerk of the train and injured.   The appellee was at the time of the injury engaged in inter-state commerce, assisting in operating a train which was carrying interstate commerce, and this suit was therefore brought under the Federal Employers' Liability Act, and a recovery for his injury sought under the provisions of that act.   Appellee alleged that he was injured by the negligence of the engineer in stopping the train in an unusual and violent manner; that he was thrown against the desk and permanently injured; that the engineer, in a sudden and violent manner, checked the train without notice or warning, throwing him against the writing desk, injuring his right side, fracturing five or six ribs and otherwise injuring him, and that he is in constant pain and suffering.   At the time, and since his injury, he has suffered great and excruciating pain of body and mind, and will continue to suffer throughout the remainder of his life.   He further alleged that, at the time of his in-

juries, he was a strong, able-bodied man, 38 years of age and was earning $200 per month; that since his injury he has suffered great pain of body and mind and will continue to suffer, and that his injury is permanent; that since his injury he has not been able to perform any labor of any kind, and alleged that he was damaged in the sum of $25,000, for which he prayed judgment. The appellant answered, denying all the material allegations in the complaint as to negligence, and as to his injuries, and interposed the defenses of contributory negligence and assumption of risk. The undisputed evidence showed that the appellant was engaged in interstate commerce at the time of the injuries, and that appellee was engaged in interstate commerce. There was a verdict and judgment for $12,500, and the case is here on appeal.

Appellant's first contention is that the court erred in not giving instruction No. 1, requested by appellant, which directed the jury to return a verdict for the appellant. Appellant insists that this instruction should have been given because it says that the evidence is not legally sufficient to sustain the verdict; that evidence of the violent jerk of the train injuring appellee is not evidence of negligence. We have held that, under the Federal Employers' Liability Act, it is necessary for the injured employee to prove that the railroad company was negligent, and that its negligence was the proximate cause of the injury. The burden is on him to prove these facts, and, if he fails to prove either, he cannot recover. The negligence of the railroad company must in whole or in part cause the injury.

Appellant first calls attention to *St. Louis-San Francisco Railway Co.* v. *Smith*, 179 Ark. 1015, 19 S. W. (2d) 1102. We said in that case: "No witness was able to say just how the accident happened." We said further: "There was no evidence which tended to prove how the accident happened. As we have stated, it might have occurred in one of several ways." Appellant calls attention to several cases decided by courts of other States, but it is unnecessary to review them. In numerous cases

decided by this court, we have announced the rule contended for by the appellant. Appellant cites the case of *Patton* v. *T. & P. Ry. Co.*, 179 U. S. 658, 21 S. Ct. 275. That case was decided before the Employers' Liability Act, but in that case the court said: ''It is undoubtedly true that cases are not to be lightly taken from the jury; that jurors are the recognized triers of questions of fact, and that ordinarily negligence is so far a question of fact, as to be properly submitted to and determined by them.'' In that case the court also said: ''The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence.'' This is the well-established rule of this court. Appellant cites other cases to the same effect.

Attention is also called to *A. T. & S. F. Ry. Co.* v. *Toops*, 281 U. S. 351, 50 S. Ct. 281. It was held in that case that the injured employee must not only prove negligence of the company, but that the negligence proved was the cause of the injury. This suit is brought under the Federal Employers' Liability Act, and, since this act does not define negligence, the question of whether the acts complained of amount to negligence is to be determined according to the common law and according to the rules prevailing in the Federal courts as to what constitutes negligence under the common law. However, there is no difference between the decisions of the Federal court and of this court as to what constitutes negligence. *Missouri Pacific Rd. Co* v. *Skipper*, 174 Ark. 1083, 298 S. W. 849.

Moreover, the court gave the jury the following instruction, among others: ''The court instructs you that mere proof of a violent or unusual shock, jar or jerk on a freight train is not sufficient to show that it was caused by the carelessness of the engineer, and the fact that the brakeman suffered an injury caused by such operation of a freight train does not give rise to any presumption of negligence.''

The undisputed evidence shows that appellee was injured by being thrown against the desk at which he was sitting at work in the performance of his duty. The appellee testified: "At the time I was injured I was getting out a switch list, and was sitting down at a writing desk. The conductor had requested me to do this, and I was engaged at that when I was injured." He also testified that it was the most violent "run-in" he had ever experienced. He had been engaged in railroading for about twenty years. Had fired and run an engine. He said the violent jar was caused by the improper application of the air by the engineer. He was asked on cross-examination: "In stopping a freight train of that length you would have more or less jerks in the caboose as the slack works out?" and he answered: "Not like the one when I got hurt." Appellee further testified that the bump in the caboose was caused by the improper application of the air. If it had been applied properly, it wouldn't have occurred. He said he was certain the brakes were released. He heard the air released through the retainer valves. The air had not gone in the usual way. Another brakeman, Charles E. Seal, was riding in the cupola of the caboose and could see the slack running in, and he prepared himself. He saw the violent movement of the train and was protecting himself against getting hurt. In that way he avoided injury. The movement was violent.

J. W. Barnard, who had had experience in handling all kinds of trains and who had worked for appellant for thirty years, from 1899 to 1929, testified that, with a train of 97 cars going 25 miles an hour and a "run-in" of sufficient violence to injure appellee and throw another man from a standing position in the caboose to the floor, in his judgment, the violent "run-in" would be caused by improper handling of the train. If stopping is properly done, there will not be any jar in the caboose of a train that has 100 box cars on it. The train can be stopped so that there will not be any jar. While the engineer, V. L. Brown, testified that he did not put on the brakes at

all, he also testified that he could not tell how there would be a jar; that it was his business to keep it from being a jar. He also said, if he had handled the train in the manner he said, there would be no jar that he knew of. The conductor, a witness for appellant, testified that there was a jolt, and that he had never seen any worse; that the brakes were applied. He knew the brakes were applied because he heard the air released. He was standing in the caboose, and was thrown down by the violent jar.

Some of appellant's witnesses testified that there was no violent jar, but all admit that, if the brakes were applied, that it was improper handling of the train. Not only do the witnesses testify that the air was applied improperly, but appellant's witnesses testify that there was trouble after this "run-in." They had to get out and release the brakes by hand. This testimony is not contradicted. There was substantial evidence of negligence, and the court did not err in refusing to give appellant's requested instruction No. 1.

Appellee and other witnesses had made statements which were introduced in evidence. We will not set forth this evidence. The credibility of witnesses and the weight of the evidence are questions for the jury. There was substantial evidence of negligence.

Appellant next contends that appellee assumed the risk. If the injury had been caused by an ordinary or usual jar, appellee could not recover. The court gave to the jury the following instruction: "The court instructs you that the plaintiff, by entering the service of defendant as a brakeman, assumed all the risks ordinarily incident to that employment, and, if you find from the evidence that he was injured by a cause ordinarily incident to his employment, that is one that in the performance of his duties it was contemplated he would meet and encounter, then he cannot recover in this action, and your verdict will be for the defendant." This instruction was given at the request of the appellant. When one enters the employ of another, he assumes all the risks and hazards ordinarily incident to the employment, and the mas-

ter is not liable for injury resulting to the servant if the injury to the servant was caused by one of the ordinary or usual risks or hazards of the employment; but the servant does not assume the risk of the negligence of the master for whom he works or any of its servants, unless he knew of the existence of the negligence. *Miss. River Fuel Corp.* v. *Morris*, 183 Ark. 207, 35 S. W. (2d) 607; *Aluminum Co. of N. America* v. *Ramsey,* 89 Ark. 522, 117 S. W. 568; *S. W. Power Co.* v. *Price,* 180 Ark. 567, 22 S. W. (2d) 373; *C., R. I. & P. Ry. Co.* v. *Allison,* 171 Ark. 983, 287 S. W. 197; *Western Coal & Mining Co.* v. *Burns,* 168 Ark. 976, 272 S. W. 357; *C., R. I. & P. Ry. Co.* v. *Daniel,* 169 Ark. 23, 273 S. W. 15; *St. L. S. W. Ry. Co.* v. *Martin,* 165 Ark. 30, 262 S. W. 982; *M. P. Rd. Co.* v. *Remel,* 185 Ark. 598, 48 S. W. (2d) 548.

It would, of course, have been impossible for the appellee to have known of the existence of the negligence of the engineer, because he was in the caboose sitting and could not have seen any evidence of the negligence before his injury. The brakeman riding in the cupola saw the effect of the brakes and knew the danger and prepared himself, but the appellee and conductor, who were in the caboose, could not know this.

Appellant's next contention is that the method used to stop or slow down the train at the point of accident, is not negligence on his part. The engineer testified that he did not use the brakes at all. Several witnesses testified, not only that he did, but that he jammed the brakes so that they had to get out of the train and release them by hand. Moreover the engineer's testimony shows that, if he used the brakes, as the witness testified, it would have been improper. The engineer testified, as we have said, that he did not use the brakes at all. Other witnesses testified that he did, and the circumstances show that the brakes were used.

Appellant contends that the court erred in refusing to give instructions requested by it. The instructions requested by appellant and refused by the court were

some of them peremptory, and the others were all covered by other instructions given by the court.

There was evidence of the serious injury of appellee and of his pain and suffering, and substantial evidence that this was caused by the negligence of the appellant. We find no error, and the judgment is affirmed.