THE C. M. FARMER STAVE & HEADING COMPANY *v.* WHORTON.

4-4542

Opinion delivered March 1, 1937.

709

Claude A. Fuller, E. M. Fowler, A. J. Russell, Jr., and Bernal Seamster, for appellants.

Dewey Glass, W. N. Ivie and Charles W. Ivie, for appellee.

BUTLER, J. The appeal in this case is brought seeking to reverse a judgment of the circuit court of Madison county, Arkansas, in favor of E. E. Whorton against C. M. Farmer Stave & Heading Company and Verdi Brothers Cooperage Company for damages for personal injury alleged to have been sustained through the negligence of the appellants. The appellee, plaintiff below, alleged that on September 7, 1933, he was an employee of the appellants, defendants below, engaged at that time in the operation of a sawmill and the manufacture of "heading"; that on said date he was injured by being drawn into a saw which was the result of the negligence of the appellants in failing to furnish him a safe place and appliances with which to do his work.

Service was attempted to be had upon the cooperage company by having a summons served upon the Auditor of State. That company entered its special appearance and filed its motion to quash the service on the ground

that it was a foreign corporation not authorized to do business in the state of Arkansas and that it had no officers, agents or employees in Arkansas, nor was it attempting to transact business therein. The certificate of the Secretary of State was attached to this appearance to the effect that the cooperage company had not attempted to comply with the laws of the state relative to foreign corporations doing business therein and that said company had never had any authority to operate in Arkansas. This motion appears to have been overruled and the cooperage company, reserving its rights as set out in its motion and saving its exceptions to the ruling of the trial court, filed its answer denying that it was authorized to do business in Arkansas or was engaged in any business therein, and that it was jointly engaged with the C. M. Farmer Stave & Heading Company in the manufacture of heading or in any other kind of business. Answering further, it denied specifically all the allegations of the complaint.

C. M. Farmer Stave & Heading Company likewise answered denying each of the allegations of the complaint.

At the conclusion of the testimony each of the appellants separately moved for an instructed verdict. These motions were overruled and exceptions were duly saved. In the motion for a new trial these objections and exceptions were preserved together with other assignments of error relating to improper action of the trial court in the introduction of evidence and other errors alleged to have occurred during the course of the trial, including improper argument of counsel and erroneous declarations of law.

Counsel for appellee, in their brief, challenge the sufficiency of the transcript and of the abstract filed by the appellants. As to the transcript, it is pointed out that it does not appear that the judgment or order overruling the motion for a new trial purports to have been entered of record as judgment and order of the court; also, that the motion for a new trial appears not to have been filed within three days after the rendition of the judgment and at the term the same was rendered. We take it that this

contention is based on the fact that the transcript of the judgment and of the order overruling the motion for a new trial does not make reference to the record book and page where these judgments were entered. We think this is unnecessary. The headings show that these proceedings were had in the circuit court and the recitals of the judgment and order are to the effect that they were made by the court. The certificate of the clerk shows that the transcript includes the record and proceedings in the cause. This is sufficient to identify the judgment and order as made and entered of record by the court. *Van Buren* v. *Lawson,* 160 Ark. 631, 255 S. W. 295; *Lawson* v. *Road Imp. Dist.,* 163 Ark. 303, 259 S. W. 747. As to the motion for a new trial, appellee's contention is answered by the recital in the order that the motion for a new trial was ''filed herein by the defendants * * * within the time and in the manner provided by law.'' If, in fact, the judgments and orders were not entered of record, or that the trial court on the 29th day of June, 1936, was not in session, or that the motion for a new trial was improvidently filed, the appellee could, and doubtless would have made an affirmative showing to that effect.

Since the filing of appellee's brief in which the sufficiency of the appellants' abstract is questioned, appellants have filed an amended abstract which contains a fair statement of the facts with proper reference to the transcript for verification. It gives us a fair understanding of the issues involved and is a substantial compliance with Rule IX of this court. *Johnson* v. *Commonwealth B. & L. Ass'n,* 182 Ark. 226, 31 S. W. (2d) 136; *Holcomb* v. *American Surety Co.,* 184 Ark. 449, 42 S. W. (2d) 765.

We pass without notice the assignments of error relating to alleged errors of the trial court during the course and in the conduct of the trial, and pass to the principal contentions of appellants for reversal of the judgment. These are based on the refusal of the trial court to direct a verdict in their favor at the conclusion of all the testimony. The first contention, as to Verdi Brothers Cooperage Company is that appellee failed to show by the evidence that it was engaged in business within the state of Arkansas, or that it had such interest

712

or connection with the stave and heading company as to impose liability upon it for the injury sustained by the appellee. The next point made is that the evidence fails to establish the relationship of master and servant between the appellants and appellee, but does establish the fact that appellee was an independent contractor. Lastly, it is contended that, even though the appellee was the servant of appellants, his injury was the result of risk which he had assumed.

We are of the opinion that all of these contentions are well taken, but we will discuss only that part of the evidence relating to the relationship of the parties and the law applicable thereto. If the relationship of master and servant did not exist, it necessarily follows that there could be no liability on the part of the appellants for an injury sustained by the appellee while pursuing a business over which they had no control.

"When the person employed is in the exercise of a distinct and independent employment and not under the immediate supervision and control of the employer, the relation of master and servant does not exist, and the liability of a master for the negligence of the servant does not exist." *Mississippi River Fuel Corp.* v. *Young*, 188 Ark. 575, 67 S. W. (2d) 581. "The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor." 14 R. C. L. 67, cited with approval in the case of *Mississippi River Fuel Corp.* v. *Morris,* 183 Ark. 207, 35 S. W. (2d) 607. "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work." 2 Words & Phrases, second series, p. 1034, quoted with approval in the cases of *Moore Lumber Co.* v. *Starrett,* 170 Ark. 92, 279 S. W. 4, and *Mississippi River Fuel Corp.* v. *Morris, supra.*

We think the evidence, when measured by the rule announced in these cases, fails to establish the relation of master and servant between appellants and appellee, but does establish the fact that appellee was an independent contractor. In support of the contention that appellee was the servant of the appellants, reliance is placed on that part of the testimony of C. M. Farmer, the president of the stave and heading company, as follows: "We furnished them the money to buy timber and staves and give them so much for their staves, give them a fair price for their staves. * * * We hired these men; they took it by contract and we would furnish them the mills and the money, and contract for them to make staves and heading; I was superintending the operation at the time and furnishing the mills and the money and telling them what I wanted and hired them to make them; we furnished the mills and the money and they were operating the mills for us; we made an agreement with them to go and make these staves and give them so much a thousand for them delivered on board cars." "Q. I would be glad if you would explain, so the reporter can get it, why you stated a while ago you were engaged in the business of making staves and that you were operating thirteen mills? A. Well, I meant this: we bought these mills; we turned these mills over to fellows to operate, and furnished them money; we gave them a certain price for these staves delivered on board the cars; now, that is to what extent we operated the mills." Further along in the testimony of Mr. Farmer, testifying specifically as to his connection with appellee, he stated that he (Farmer) furnished Whorton the mill and money to operate it and gave him a certain price for the heading delivered on board cars; that he had nothing to do with the operation of the mill nor did his company; that he, or some one else for the company, would go out to the mill occasionally to see how Whorton was getting along and to see that the heading was being manufactured properly; that his company did not directly, or indirectly, exercise any control or superintendency over Whorton in the operation of the mill further than to see that the heading was sawed according to specification; that Whorton was paid no salary and that

he used the same mill after this suit was filed making heading and selling it to other parties. In this testimony he was fully corroborated by the testimony of Mr. Whorton himself, who stated that he was "merely working for the stave and heading company," and who explained how he was working in the following way: that the company furnished him the mill and advanced him the money for its operation which was placed in a bank to his credit; that he hired the labor and furnished the gas, oil and tools for its operation, purchased and paid for the repairs; that some of these items were billed to the stave and heading company, but that he paid them with his checks drawn upon the bank in which he carried his deposit; that when the heading was manufactured he delivered it loaded upon the cars; that he was not paid any salary, but was given a certain price for the heading delivered on board the cars; that he was boss of the mill, hired his own men, instructed them about the work and bossed them.

This evidence makes out a contract of independent employment for the manufacture of heading without being subject to the control of the employer except as to the result of the work. In the case of *Harkins* v. *National Handle Company*, 159 Ark. 15, 250 S. W. 900, we held (quoting headnote): "Where the lessee of a sawmill employed his own labor, bought his own material, and conducted the business according to his own methods, he was an independent contractor, though the lessor reserved the right to control the kind, quality and quantity of the output according to specifications and prices submitted from time to time, and the right to cancel the lease in case the lessee should create obnoxious and offensive conditions, and advanced money to meet the lessee's payrolls on lessor's payroll forms."

The evidence is undisputed that appellee took the mill as he found it, with machinery in the identical condition it was when he was injured four months later, operated it according to his own methods without any control attempted to be exercised over him by the appellants. It, therefore, follows necessarily that the ap-

pellants are not responsible for the injury received by appellee, and are not liable therefor.

It follows that the trial court erred in refusing to direct a verdict in favor of the appellants. For that error the judgment is reversed, and, as the case appears to have been fully developed, the same is dismissed.